IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

GEORGE SEPULVEDA )<br>
)<br>
v. ) CA. No.00-0624ML<br>
)<br>
UNITED STATES OF AMERICA )

**GOVERNMENT'S OBJECTION TO DEFENDANT'S "MOTION TO ALTER JUDGMENT PURSUANT TO F.R.CIV.P. 59(E)"**

Comes now the United States of America, by and through its attorneys, Robert Clarke Corrente, United States Attorney, and Gerard B. Sullivan, Assistant United States Attorney, and hereby objects to defendant's motion as set forth in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA<br>
By its attorneys,

ROBERT CLARKE CORRENTE<br>
United States Attorney

Gerard B Sullivan

GERARD B. SULLIVAN<br>
Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

GEORGE SEPULVEDA )
)
v. ) CA. No.00-0624ML
)
UNITED STATES OF AMERICA )

**GOVERNMENT'S OBJECTION TO DEFENDANT'S "MOTION TO ALTER JUDGMENT PURSUANT TO F.R.CIV.P. 59(E)"**

I. INTRODUCTION

In 1997, the defendant, George Sepulveda ("Sepulveda") was convicted following a lengthy jury trial for his role as the leader of a criminal street gang and for a murder committed in aid of that racketeering activity. He was ultimately sentenced to life imprisonment.

Following his conviction and sentence, Sepulveda embarked on a long and torturous appellate and post-conviction traverse, the travel of which is largely set out in the August 15, 2005 Memorandum and Order of the Court denying Sepulveda's Motion For Relief From Judgment pursuant to Rule 60(b)(4). In that motion, Sepulveda inappropriately attempted to use that rule to vacate the denial of his § 2255 petition by raising issues that he had not presented in his original petition. From the denial of the Rule 60(b)(4) motion, this newest motion spawns.

In his Rule 60(b)(4) motion, Sepulveda claimed that the jury selection process at his trial was conducted in violation of the

Jury Selection and Service Act, 28 USC § 1861, and in violation of his rights under the Sixth Amendment. Although he had not raised that claim in his original § 2255 filing, this was not the first time that Sepulveda had raised the issue. At trial he filed a, "Motion To Dismiss Indictment Or In The Alternative Stay Impanelment Of Petit Jury." He also filed an, "Ex Parte Motion For The Authorization For The Appointment Of Professor Darryl M. West As An Expert Witness Regarding The Impact Of The 'National Voter Registration Act' On Jury Selection."

Almost a decade ago, those motions were denied by Memorandum and Order filed by the Court on November 13, 1996. (Exhibit 1). On direct appeal, Sepulveda revisited this issue and the First Circuit denied his claims. United States v. Lara, 181 F.3d 183, 192 (1st Cir. 1999). Sepulveda's Rule 60(b)(4) motion was only his most recent attempt to unsuccessfully and improperly relitigate the issue by reopening his § 2255 petition.

Although misfiled, misused, and defaulted, the Court endeavored to favorably construe Sepulveda's Rule 60(b)(4) filing as a second or successive § 2255 petition -- but could not. In a footnote, the Court observed,

> "This Court is cognizant that the instant matter may alternatively be transferred to the Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3) for possible authorization as a second and successive § 2255 motion. See Barrett, 178 F.3d at 41 n.1 (noting that while several circuits *require* transfer in such situations, the First Circuit has yet to

> implement such a blanket mandate but that transfer may be preferable in some situations in order to deal with statute of limitations problems or certificate of appealability issues). Here, the Court finds that dismissal of the instant Rule 60(b) motion is warranted, as its numerous flaws (discussed above) constitute an egregious violation of the procedural requirements of AEDPA for postconviction filings. Moreover, even construed as a potential second and successive motion, it is untimely, having been filed more than four years after his conviction became final. In addition, the Court notes that Sepulveda's repeated attempts to attack his conviction via motions with different labels suggest an ongoing effort by him to circumvent the procedural requirements of AEDPA for postconviction filings."

Undeterred and unmindful of the procedural requirements of the AEDPA, Sepulveda nevertheless files this new motion under "Rule 59(E)" to alter the judgment of the Court on his Rule 60(b)(4) motion. Once again, Sepulveda attempts to improperly use a rule for a purpose to which it was not designed, on an issue that was decided at trial, on direct appeal, and which was defaulted on post-conviction relief.

## II. ARGUMENT

Sepulveda relies in error on "Rule 59 (E)". Presumably he means Rule 59(e) and he probably means the Court to rely on all of Rule 59, not just subsection (e) which merely establishes a 10-day time limit for filing such a motion. Whether or not he has met that time limit is subject to some debate because it is

unclear as to whether his motion was filed within ten days of judgment. If the judgment he wants reconsidered was his § 2255 proceeding, he clearly has not met the time limitation and is again defaulted. If the judgment is the Rule 60(b)(4) decision, revisiting the old § 2255 decision, he has filed within the ten days allowed under the rule. The Court need not long consider the limitation, because whether timely or not, Sepulveda is not entitled to the relief that he seeks.

Rule 59(e) is a motion for reconsideration and cannot be used as a vehicle to relitigate and/or rehash matters already litigated and decided by the Court. Standard Quimica De Venezuela v. Central Hispano International, Inc., 189 F.R.D. 202, n.4 (D.P.R., 1999). It also may not be used as a vehicle by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier". National Metal Finishing Com. V. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 124 (1st Cir., 1990). For these reasons, motions for reconsideration are "extraordinary remedies which should be used sparingly," Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir., 1990), and are "typically denied," 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1, at 128 (2d ed. 1995).

To breath new life into this dead issue under Rule 59, Sepulveda couches his pleading in terms of "newly discovered evidence." It is unclear what Sepulveda considers "new" about this lifeless corpse. Is it the cost of the research? Is it the availability or unavailability of funds? Is it the presumed existence of as yet undiscovered data? He refers specifically to two documents that he received in 2003. If that is the evidence, it is not newly discovered. Regardless, Sepulveda knew all about jury composition in 1996 when he litigated these issues before the district court and later when he contested the decision on appeal.

In the federal system, except on direct review, the court is not required to reconsider the legal conclusions of another federal court. Accordingly, when a federal prisoner raises a claim that has been previously litigated and decided on direct review, he cannot raise that claim in a § 2255 proceeding, absent extraordinary circumstances. See Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases); Argencourt v. United States, 78 F.3d 14, 16 n.1 (1st Cir. 1996). However, the relitigation doctrine does not act as an absolute bar to all claims that have been previously raised and can be overridden if exceptional circumstances exist. See United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 199 (1950). Most petitioners allege their claim exhibits extraordinary

circumstances, but are unable to prove relitigation is necessary. See e.g., United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) ( per curiam); Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999). Relitigation is only likely if the claim has been effected by a change in the law. See Davis v. United States, 417 U.S. 333 (1974). Normally, once a claim has been rejected on direct review, it is not available to the Petitioner in a § 2255.

Here, Sepulveda was heard and denied in the trial court. The denial was challenged and rejected on appeal. Sepulveda deliberately bypassed the claim on post-conviction relief and then attempted, but was not permitted, to reopen the issue through his Rule 60(b)(4) filing. In denying that motion, a prescient court anticipated and foreclosed the relief now sought in this motion. There is nothing new about the evidence. There is nothing new about the law. There are no exceptional circumstances and no reason to revisit this thoroughly litigated claim.

III. RECENT ACTION BY THE FIRST CIRCUIT COURT OF APPEALS

During the preparation and drafting of this memorandum, the United States also became aware that Sepulveda was apparently attempting to litigate the same or similar issues in the Court of Appeals. Just last week the United States received a new summary dismissal order from the Circuit Court.

On September 22, 2005, the First Circuit had entered an order denying Sepulveda permission to file a second or successive § 2255 motion. In that request, as here, Sepulveda relied on "newly discovered evidence" of demographic data about Rhode Island. The Circuit noted that Sepulveda's claim was previously rejected, legally insufficient and defaulted. (Exhibit 2). Just last week, on October 17, 2005, the Circuit entered an order denying his motion for reconsideration on the same issues. (Exhibit 3).

IV. CONCLUSION

For all the reasons set forth, the court should deny Sepulveda's, "Motion to Alter Judgment Pursuant to F.R.CIV.P. 59(E)."

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

GERARD B. SULLIVAN
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 28th of October 2005, I served a copy of the within Government's Objection to Defendant's "Motion To Alter Judgment Pursuant To F.R.CIV.P. 59(E)", by mailing same, postage prepaid, to:

George Sepulveda
Pro Se
United States Penitentiary
P.O. Box 1000
Lewisburg, Pennsylvania 17837

Gale E. Dames

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v. CR 95-075ML

GEORGE SEPULVEDA, a/k/a "KING PARADISE" a/k/a "DISE"
TERRENCE BOYD, a/k/a "KING BULLET" a/k/a "T"
SHARIFF A. ROMAN, a/k/a "KING BIZ"
GEORGE PERRY, a/k/a "KING ANIMAL"
EDSON TORO, a/k/a "KING HUMPTY"
GIOVANNI LARA, a/k/a "KING G"
ERYN VASQUEZ, a/k/a "KING GUY."

## MEMORANDUM AND ORDER

This matter is before the court on motions filed by defendants George Sepulveda and Terrence Boyd to dismiss the indictments or, in the alternative, to stay the impanelment of a petit jury.[1] Additionally, defendants Sepulveda and Boyd move ex parte for authorization for the appointment of an expert witness to testify regarding the impact of the National Voter Registration Act on jury selection. For the reasons set forth below, both motions are denied.

I. Background

Defendants George Sepulveda and Terrence Boyd and nine co-defendants have been charged in a seventeen count superseding indictment which avers a variety of criminal acts including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspiracy to violate RICO, as well as illegal possession of firearms, drug trafficking, witness

[1] Defendants George Perry, Shariff Roman, Edson Toro, Giovanni Lara, and Eryn Vasquez join in this motion.



555

intimidation, murder and conspiracy to murder, all undertaken in furtherance of racketeering.[2] The defendants argue that the method used to assemble the grand jury which returned the superseding indictment and the petit jury by which they may eventually be tried is defective. The defendants assert that, due to the State of Rhode Island's failure to comply with the National Voter Registration Act, their jury venires do not represent a fair cross-section of the community.

In 1993, the President signed into law the National Voter Registration Act, 42 U.S.C. § 1973gg et seq. ("NVRA"). More commonly known as the "motor voter" law, the NVRA was intended to increase voter participation by making voter registration easier. See Association of Community Orgs. for Reform Now (ACORN) v. Edgar, 56 F.3d 791, 792 (7th Cir. 1995). As its popular name implies, the "motor voter" law compels those states which require advance voter registration to establish procedures which permit citizens to register to vote simultaneously with applying for a driver's license or other state-issued identification. 42 U.S.C. § 1973gg-2(a). It also compels those states to make registration possible by mail and by application in person at certain state and federal agencies. Id. Any agency which provides either public assistance or services to persons with disabilities must offer voter registration services. 42 U.S.C. § 1973gg-5(a)(2). The NVRA was to take effect in Rhode Island on January 1, 1995. See Pub.L. 103-31, § 13, May 20, 1993, 107 Stat. 89; R.I. GEN. LAWS § 17-9.1-1 et seq. The defendants allege that Rhode Island has failed to comply, thereby invalidating this court's reliance on the voter registration list as the sole source for grand and petit juries.

In advancing this argument, defendants point to a consent order recently entered by this court wherein the Rhode Island Board of Elections ("Board") conceded it had failed to comply

---

[2] Four of the co-defendants have entered guilty pleas to some of the charges.

with all the provisions of the NVRA. League of Women Voters of Rhode Island v. Rhode Island Bd. of Elections, C.A. No. 96-442ML, (D.R.I. Sept. 12, 1996). In the consent order, the Board agreed to provide materials and training to staff at the designated agencies. Id. It also agreed to implement a public relations campaign targeting beneficiaries of the NVRA to advise them of the availability of voter registration services at these offices. Id. This court exercises continuing jurisdiction over that matter for purposes of monitoring and overseeing the Board's remedial efforts. Id.

The Jury Selection and Service Act, 28 U.S.C. § 1861 et seq. (the "Jury Selection Act"), distinct from the NVRA, was enacted to ensure that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community," and that "all citizens . . . have the opportunity to be considered for service on grand and petit juries . . . when summoned for that purpose." 28 U.S.C. § 1861; see also Jewell v. Arctic Enters., Inc., 801 F.2d 11, 12-13 (1st Cir. 1986); United States v. Savides, 787 F.2d 751, 752-53 (1st Cir. 1986). Discrimination in the selection of juries "on account of race, color, religion, sex, national origin, or economic status" is prohibited. 28 U.S.C § 1862. The Jury Selection Act does not, however, prescribe any particular method for jury selection necessary to achieve its objectives. Rather, individual judicial districts must "devise and place into operation a written plan for random jury selection of grand and petit juries" with the approval of a reviewing panel. 28 U.S.C. § 1863(a). This court adopted the Jury Selection Plan for the District of Rhode Island, Misc. No. 75-209, as amended October 6, 1993 ("District Plan").

The District Plan directs that grand and petit juries in this district be randomly selected "from the lists . . . of registered voters of the municipalities within the District and who are of

record as registered voters in each presidential general election." Those names selected are placed into a master jury wheel from which prospective jurors are qualified for duty. See generally United States v. Marrapese, 610 F. Supp. 991, 993 (D.R.I. 1986), aff'd on other grounds, 826 F.2d 145, 151 (1st. Cir.), cert. denied, 484 U.S. 944 (1987). Every four years, following the national presidential election, the master jury wheel is refilled based on an updated voter registration list certified by the State of Rhode Island.[3] Amendment to Jury Selection Plan, January 7, 1985; accord 28 U.S.C. § 1863(b)(4).

Defendants contend that, by virtue of Rhode Island's noncompliance with the NVRA, the voter registration list does not comport with federal law and, therefore, there is a "substantial failure to comply" with the Jury Selection Act. 28 U.S.C. § 1867(d). Their argument is twofold: first, that their grand jury venires were not selected from a list of registered voters which reflected a fair cross-section of the community; and second, that the petit jury cannot represent a fair cross section of the community until the State of Rhode Island complies with the NVRA and a new voter list is drawn or the court prescribes some other source of names from which to draw jurors.

II. Discussion

The Jury Selection Act sets forth the procedure by which a litigant may challenge the process of the selection of his venire. Under 28 U.S.C. § 1867, a litigant must timely file a motion either to dismiss the indictment or to stay the proceedings "before voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of due diligence, the grounds therefor." 28 U.S.C. § 1867(a); see also Fed. R. Crim. P. 6(b)(2). A

[3] The court notes that even had Rhode Island fully complied with the NVRA, the voter registration list would not have been updated until some time after the recent national presidential election. See R.I. GEN. LAWS § 17-9.1-27.

litigant must also submit with the motion "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." 28 U.S.C. § 1867(d). Circuit precedent construes these requirements strictly. See, e.g., United States v. Foxworth, 599 F.2d 1, 3 (1st Cir. 1979); United States v. D'Alora, 585 F.2d 16, 22 (1st Cir. 1978); Marrapese, 610 F. Supp. at 996; see also United States v. Pion, 25 F.3d 18, 26 (1st Cir.) (Torruella, J., concurring) (citing cases), cert. denied, 115 S. Ct. 326 (1994). The procedure set forth - submitting a sworn statement in a timely fashion - is the exclusive means by which a person accused of a crime may challenge the selection of his jury venire under the Jury Selection Act. See 28 U.S.C. § 1867(e).

Although the government contests the point, the instant motions have been filed before voir dire has begun and within two weeks of the entry of the consent judgment in League of Women Voters. They are therefore timely for purposes of the Jury Selection Act. With respect to the sworn statement requirement, however, the defendants falter.

The defendants included with their motion the sworn statement of Walter Stone, counsel for defendant Sepulveda. Stone's affidavit describes those facts already discussed herein: the background and purpose of the NVRA, the League of Women Voters case, the Jury Selection Act and the District Plan promulgated thereunder. With the possible exception of four conclusory, self-serving statements at the end affidavit, Stone does not attest to any facts "which, if true" would convince this court of some substantial noncompliance with the Jury Selection Act.[4] More specifically, Stone fails to assert that any particular group has possibly been excluded

[4] At the outset, the court observes that the defendants' burden is to show a substantial failure to comply with the provisions of the Jury Selection Act, not the National Voter Registration Act. The court will assume, arguendo, that Rhode Island substantially failed to

from the defendants' jury venire, how they have been excluded, and the effect of their exclusion on the jury selection process. Defendants' failure to set forth specific facts in and of itself justifies a denial of their motions. Foxworth, 599 F.2d at 3; Marrapese, 610 F. Supp. at 997-98. However, given the importance of the Sixth Amendment rights at stake and the significance of the issue presented, the court turns to the substance of the motions nevertheless. See Pion, 25 F.3d at 22 n.3; Foxworth, 599 F.2d at 3; Marrapese, 610 F. Supp. at 998.

It is well-settled that juries must be drawn from a source "fairly representative of the community." Taylor v. Louisiana, *419 U.S. 522, 538 (1975)*. Jury wheels, venires, panels and pools of names from which juries are composed may not systematically exclude particular groups so as to unfairly represent some groups over others. Id. The Supreme Court has set forth a three part test by which a defendant must make a prima facie showing of a violation of the fair cross-section requirement. Duren v. Missouri, 439 U.S. 357, 364 (1979). The defendants must demonstrate:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are to be selected is not fair and reasonable in relation to the number of such other persons in the community; and (3) that this underrepresentation is due to systematic exclusion of this group in the jury selection process.

Id.; see Foxworth, 599 F.2d at 3. *The defendants have failed to establish any one of these* elements.

Perhaps the greatest of the defendants' shortcomings for purposes of this analysis is their failure to identify a legally cognizable group. It is the best that this court can discern that the defendants claim all of the intended beneficiaries of the NVRA to be the group wrongfully

---

comply with the NVRA.

excluded from the jury pool. Based on a vague Congressional finding and the fact that all offices which provide public assistance or services to the disabled are designated registration sites, the defendants urge this court to conclude that the intended beneficiaries are racial minorities, low-income and disabled Americans. See 42 U.S.C. § 1973gg(a)(3); 42 U.S.C. § 1973gg-5(a)(2). While these groups are undoubtedly among the many intended beneficiaries of the NVRA, this court cannot say that Congress intended to benefit solely low-income, minority, or disabled Americans.[5] Rather, it appears from the language of the NVRA that Congress intended simply to make voter registration easier for all eligible citizens. See 42 U.S.C. § 1973gg(b)(1); H. Rep. No. 9, 103th Cong., 1st Sess. 3 (1993), reprinted in 1993 U.S.C.C.A.N. 105, 107; see also ACORN, 56 F.3d at 792. It is self-evident why the entire national electorate is not a distinctive class.

The First Circuit has explained that "the essence of a distinctive group is that its members share specific common characteristics." Barber v. Ponte, 772 F.2d 982, 998 (1st Cir. 1985) (en banc), cert. denied, 475 U.S. 1040 (1986). This means (1) that the group be defined and limited by some clearly identifiable factor (for example, race or gender), (2) that a common thread or

---

[5] Among Congress' stated findings in the body of the NVRA is the statement that "discriminatory and unfair registration laws can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 42 U.S.C. § 1973gg(a)(3). It is from this language that the defendants ask this court to extrapolate that racial minorities are underrepresented on the voter registration list and, therefore, are systematically excluded from jury service. The flaws with this logic are several.

First, the language of the NVRA "merely intones the truism that 'discriminatory and unfair registration laws can have a direct and damaging effect on voter participation.'" United States v. Greer, 900 F. Supp 952, 956 (N.D. Ill. 1995)(emphasis in original). It does not amount to a finding that discriminatory practices exist in any particular state. Id. Second, even if Congress was responding to discriminatory registration laws that some states had in effect, there is no telling that Rhode Island was one of these states. See id. Finally, even assuming that Rhode Island had such discriminatory voter registration laws, there is nothing in either the NVRA or its legislative history illustrating a Congressional intent to effect jury selection. See id.

basic similarity in attitude, ideas, or experience runs through the group, and (3) that there be a community of interest among the members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process. Id. at 997. These standards are to be strictly applied. Anaya v. Hansen, 781 F.2d 1, 5 (1st Cir. 1986).

Defendants urge this court to find that "low-income" and "disabled" citizens comprise legally cognizable, distinctive groups for purposes of challenging the jury selection plan. In doing so, however, the defendants offer no explanation as to how these groups might fit the criteria set out in Barber and Anaya. The term "disabled Americans," for example, encompasses a broad spectrum of individuals with disabling conditions. By virtue of the fact that disabling conditions are so widely varied, it is highly unlikely that the individuals who would be lumped together, as defendants suggest, would in fact share common attitudes, ideas, or experiences. Furthermore, whatever common thread might run through this amalgam of citizens, it is far from apparent that the core values of the group would go unrepresented by other members of the jury venire.

> In choosing a jury, we are not looking for a statistical mirror of arbitrary segments of the general population's composition. The goal that we seek is that the jury generally represent the attitudes, values, ideas, and experience of the eligible citizens that compose the community where the trial is taking place.

Barber, 772 F.2d at 997. Turning next to defendants' proffer that "low-income" persons comprise a legally cognizable group, this court finds no substantiation for defendants' claim. Rather, this court acknowledges that the First Circuit has already held "blue collar workers" to be too loose a definitional term to comprise a legally cognizable group. Anaya, 781 F.2d at 6. Likewise, this court concludes that the designation "low-income" does not establish a legally cognizable group.

The defendants' failure to satisfy the second and third Duren prongs flows logically from their failure to satisfy the first. Being unable to identify any particular group which has been excluded, they do not present any numerical data or other evidence tending to show underrepresentation. Their argument relies on the assumption that because the NVRA was intended to make voting easier for particular groups and because Rhode Island failed to comply, these groups were, in fact, unable or less likely to register to vote. This argument is flawed.

The use of voter registration lists as a primary source for random jury selection has been uniformly upheld, even though it has always been understood that less than all eligible citizens register to vote. United States v. Butera, 420 F.2d 564, 573 (1st Cir. 1970), overruled on other grounds by Barber, 772 F.2d at 996 and Anaya, 781 F.2d at 8; see United States v. Lewis, 10 F.3d 1086, 1090 (4th Cir 1993); United States v. Davenport, 824 F.2d 1511, 1515 (7th Cir. 1987). The Eighth Circuit has upheld the use of a voter registration list as even the sole source for selecting jury pools. Floyd v. Garrison, 996 F.2d 947, 949 (8th Cir. 1993). The fact that a group of citizens may choose not to register does not render the jury selection process unconstitutionally defective. See United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985). As the Fourth Circuit explained:

> [T]his form of jury selection (i.e., by the use of [voter registration lists]) cannot be described "as 'systematically' excluding classes that do not register in proportion to their numbers"; it is a process that comports with the "need for efficient jury selection" even though it may not "perfectly reflect the population." Nor does it follow that the voter registration lists do not satisfy the fair cross-section of the population simply because group members of one group neglected to register in the same proportion as was their share in the overall population. The Constitution and the statute do not require such perfection.

United States v. Cecil, 836 F.2d 1431, 1448-49 (4th Cir.), cert. denied, 487 U.S. 1205 (1988). In

this case, the conventional means of registering to vote were available to every eligible voter at all times concerned. Short of Rhode Island doing something to deliberately impede voters from registering, the fact that some citizens chose not to avail themselves of their constitutional privilege does not upset the fair cross-section requirement under the Jury Selection Act. See Barber, 772 F.2d at 1000; Floyd, 996 F.2d at 949; United States v. Gometz, 730 F.2d 475, 479-80 (7th Cir.), cert. denied, 469 U.S. 845 (1984). Thus, whatever exclusion there might have been because of the State's partial noncompliance with the NVRA, the court does not find that the defendants have shown it to be "systematic."

Finally, the defendants' ex parte motion for the appointment of an expert is denied. The Criminal Justice Act, 18 U.S.C. § 3006A(e)(1), provides that "a person who is financially unable to obtain . . . expert . . . services necessary for an adequate defense" may obtain them after demonstrating ex parte that such services are "necessary." Id. Generally, expert services are necessary within the meaning of this provision when the proffered testimony is "pivotal" to the indigent's defense. United States v. Manning, 79 F.3d 212, 218 (1st Cir.), cert. denied, 117 S. Ct 147 (1996). In light of the defendants' inability to identify any legally cognizable group that was even possibly excluded as a result of Rhode Island's noncompliance with the NVRA, there is no necessity in commissioning an expert to study the impact of the NVRA on the jury selection process. Such a study can hardly be said to be pivotal to an adequate defense. Cf. id.; United States v. Mateos-Sanchez, 864 F.2d 232, 239-40 (1st Cir. 1988).

III. Conclusion

As the defendants have failed to establish a prima facie violation of the fair cross-section requirement of the Jury Selection Act, their motion to dismiss the indictments or, in the

alternative, to stay impanelment of a petit jury, is denied. The defendants' ex parte motion for authorization for the appointment of an expert witness regarding the impact of the National Voter Registration Act on jury selection is also denied.

It is so ordered.

Mary M. Lisi
United States District Judge

November 13, 1996

# United States Court of Appeals
## For the First Circuit

RECEIVED SEP 23 2005 U.S. ATTORNEY DISTRICT OF R.I.

No. 05-2336

GEORGE SEPULVEDA,

Petitioner,

v.

UNITED STATES,

Respondent.

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

**JUDGMENT**

**Entered: September 22, 2005**

George Sepulveda seeks permission to file a second or successive motion pursuant to 28 U.S.C. § 2255. In support of that request, he relies upon "newly discovered evidence" in the form of a letter from the Prisoners Self Help Legal Clinic (PSHLC) in Newark, New Jersey, responding to his request for demographic data about Rhode Island. The evidence is proffered in support of the fair cross-section claim which was rejected by the district court and on direct appeal. See United States v. Lara, 181 F.3d 183, 191 (1st Cir. 1999). Sepulveda's proffer is insufficient to satisfy the tripartite showing under Duren v. Missouri, 439 U.S. 357, 364 (1979). Moreover, Sepulveda has not satisfied his burden of making a prima facie showing that the "newly discovered evidence [], if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." § 2255. It also appears that the § 2255 motion based upon the new evidence would be untimely, as the present application

was filed two years after the date that the evidence was provided to Sepulveda.

Sepulveda's request to file a second or successive § 2255 motion is denied.

By the Court:

Richard Cushing Donovan, Clerk.

MARGARET CARTER

By: ______________________
Chief Deputy Clerk.

[cc: Gerard B. Sullivan, AUSA, George Sepulveda]

# United States Court of Appeals
## For the First Circuit

RECEIVED
OCT 18 2005
U.S. ATTORNEY
DISTRICT OF R.I.

No. 05-2336

GEORGE SEPULVEDA,

Petitioner,

v.

UNITED STATES,

Respondent.

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

ORDER OF COURT

Entered: October 17, 2005

George Sepulveda has moved for reconsideration of the denial of his application for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255. Treating that motion as a petition for rehearing, we dismiss it because 28 U.S.C. § 2244(b)(3)(E) provides that "the denial of an authorization by a court of appeals to file a second or successive application shall not be . . . the subject of a petition for rehearing."

Dismissed.

By the Court:

Richard Cushing Donovan, Clerk.

By: MARGARET CARTER
Chief Deputy Clerk.

[cc: Gerald B. Sullivan, AUSA, Donald Lockhart, AUSA, George Sepulveda]